UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

Civil Action No. 13-82-HRW

**WILSON JOHNSON,**   PLAINTIFF,

v.   **MEMORANDUM OPINION AND ORDER**

**ZIMMER HOLDINGS, INC.
and ZIMMER, INC.,**   **DEFENDANTS.**

This matter is before the Court upon Defendants Zimmer Holdings, Inc. and Zimmer, Inc.'s Motion for Summary Judgment [Docket No. 23]. For the reasons set forth below, the Court finds that Defendants are entitled to judgment as matter of law.

**I.**

This is a products liability and negligence case in which Plaintiff Wilson Johnson alleges that artificial components manufactured by the Defendants Zimmer Holdings, Inc. And Zimmer, Inc. ("Zimmer") caused him to undergo unnecessary surgery and experience appurtenant pain, suffering and distress.

The products implanted in Plaintiff were (1) a Trabecular Metal Femoral Stem (Catalog No. 00-7864-013-00, Lot. 61440948); (2) a Femoral Head (Catalog. No. 8018-36-03, Lot 60884568); (3) a Longevity Liner (Catalog. No. 00-8752-013-36, Lot 61477124); and (4) a Continuum Acetabular Cup (Catalog. No. 00-8757-058-02, Lot 61366142) (collectively, the "Devices"). The Devices were implanted in Plaintiff's left hip on June 7, 2010. After the Devices were implanted, Plaintiff's left hip dislocated at least six times over a two-year period. Due to his repeated dislocations, on June 22, 2012, Plaintiff had a revision surgery to remove and replace

the Femoral Stem, Longevity Liner, and Femoral Head in his left hip. The Continuum Acetabular Cup implanted in Plaintiff's original hip replacement surgery remains in place.

This lawsuit followed. Plaintiff claims that the aforementioned Devices are defective in their design, manufacture and lack of adequate warning. In his Complaint, Plaintiff alleges three main causes of action: strict liability, negligence, and breach of warranty.

Per the Court's Scheduling Order, Discovery was to be completed on May 8, 2014. According to the record, Zimmer served written discovery upon Plaintiff in March of 2014. Plaintiff has not served any written discovery upon Defendants nor has he conducted any depositions. The last day to serve written discovery within the established Scheduling Order was April 8, 2014.

Per the Court's Scheduling Order, Plaintiff's Rule 26(a)(2) expert disclosures were due On February 7, 2014 and Defendants' corresponding disclosures and reports on March 7, 2014 for [Docket No. 14]. Plaintiff did not disclose an expert witness. Zimmer served Rule 26(a)(2) expert disclosures and reports on Plaintiff on March 6, 2014. [Docket No. 21].

Zimmerman seeks summary judgment as to all claims against it.

## II.

In 1986, the United States Supreme Court set forth the standard for summary judgment in a trilogy of cases: *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), *Celotex v. Cartett*, 477 U.S. 317. 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), and *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Following this precedent and Fed.R.Civ.P. 56( c), the moving party is entitled to judgment as a matter of law when "[t]he pleadings, depositions, answers to

2

interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact." Summary judgment is mandated against a party who has failed to establish an essential element of his or her case after adequate time for discovery. In such a situation, there is no genuine issue of material fact as the failure to prove an essential fact renders all other facts irrelevant. *Celotex v. Cartett*, 477 U.S. at 322-323.

The United States Court of Appeals for the Sixth Circuit has interpreted the United States Supreme Court's trilogy as requiring the nonmoving party to produce enough evidence, after having had a reasonable opportunity to conduct discovery, so as to withstand a directed verdict motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The non-moving party must present more than a scintilla of evidence to demonstrate each element of a *prima facie* case. *See Van Gorder v. Grand Trunk W. R. R.*, 509 F.3d 265, 268 (6th Cir. 2007).

## III.

This Court has diversity jurisdiction and as such, will apply Kentucky substantive law. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

Under Kentucky law, a plaintiff may advance three different causes of actions against a manufacturer: (1) strict liability, (2) negligence, and (3) breach of warranty. *Williams v. Fulmer*, 695 S.W.2d 411, 413 (Ky.1985).

Additionally, Kentucky law recognizes three theories of product liability: (1) defective design, (2) defective manufacture, and (3) failure to warn. *Clark v. Hauck Mfg. Co.*, 910 S.W.2d 247, 251 (Ky.1995), *overruled on other grounds by Martin v. Ohio Cnty. Hosp. Corp.*, 295 S.W.3d 104 (Ky.2009).

To recover under any product liability claim, a plaintiff must prove the existence of a "defect" as well as legal causation. *Morales v. Am. Honda Motor Co., Inc.*, 71 F.3d 531, 537 (6th Cir.1995) (*citing Huffman v. SS. Mary & Elizabeth Hosp.*, 475 S.W.2d 631, 633 (Ky.1972)).

3

Although distinctly alleged, the three legal theories set forth in the Complaint are closely intertwined with regard to the evidence Plaintiff bears the burden of presenting in order to withstand summary judgment.

In Kentucky, a plaintiff can bring a defective design claim under a theory of strict liability or negligence, the foundation of both theories being that the product is "unreasonably dangerous." *Ulrich v. Kasco Abrasives Co., Ky.*, 532 S.W.2d 197, 200 (Ky.1976). Strict liability typically focuses on the condition of the product while a negligence inquiry examines whether the manufacturer exercised the proper degree of care to protect against foreseeable dangers when manufacturing the product for the consumer. *Ostendorf v. Clark Equip. Co.*, 122 S.W.3d 530, 535 (Ky.2003). With regard to a failure to warn, a supplier of a product may ... have a duty to warn arising out of general negligence principles of duty and preach. *See e.g. C & S Fuel, Inc. v. Clark Equip. Co.*, 552 F.Supp. 340, 347 (E.D.Ky.1982).

Once a defect is sufficiently established, Plaintiff's burden continues as to causation. He must demonstrate that the defective product was both the factual and legal cause of his injuries. under Kentucky law, causation or proximate cause is defined by the substantial factor test: was the defendant's conduct a substantial factor in bringing out plaintiff's harm?" *Morales*, 71 F.3d at 537. A plaintiff may prove causation by circumstantial evidence, but "the evidence must be sufficient to tilt the balance from possibility to probability." *Id.*

With regard to the alleged breach of express and implied warranties, these claims are somewhat derivative of the strict and negligence product liability claims in that they similarly require Plaintiff to establish that his injuries resulted from a defective or unreasonably dangerous product and that Defendants' failure to warn was the proximate cause of his injuries. *Holbrook v. Rose*, 458 S.W.2d 155, 157 (Ky.1970).

## IV.

In the dispositive motion, Zimmer agues that the subject Devices are not defective in their design, manufacture or for lack of warning.

As to design defect, Zimmer's quality engineering expert, S. Dale Miller, has found that the sales and complaint records for the Devices demonstrate that there is no design defect in the Devices as the Devices have no abnormal history of failure or complications. [Docket No. 23-6, Declaration of S. Dale Miller]. Additionally, a board-certified orthopedic surgeon and professor of biomechanical engineering, Charles R. Clark, M.D. reviewed all of the relevant evidence designated by Plaintiff in response to Zimmer's interrogatories and requests for production and determined that no evidence of a design defect exists. [Docket No. 23-4, Report of Charles R. Clark, M.D.].

As to manufacturing defect, Mr. Miller evaluated the Device's manufacturing records and confirmed that the Device met all of the manufacturing specifications that were measured during the quality control inspections conducted as a part of the Devices' manufacturing processes. [Docket No. 23-6] Additionally, he reviewed the complaint records for each of the manufacturing lots for each of the Devices and determined that the problems encountered by Plaintiff are the sole complaints against the manufacturing lots for all four of the Devices. [*Id.*]. He used this information to determine that there is no evidence that the lots of any of the Devices were defectively manufactured. Dr. Clark also reviewed all of the relevant evidence designated by Plaintiff and determined that no evidence of a manufacturing defect exists. [*Id.*].

Finally, as to a warning defect, Dr. Clark explained that dislocation is a widely known risk of total hip arthroplasty, and Zimmer sufficiently warns of the risk of dislocation in the instructions that accompany the Devices (known as "package inserts"). [Docket No. 23-4].

With regard to causation, specifically the lack thereof, Zimmer relies upon expert

5

testimony from Dr. Clark and his review of Plaintiff's medical records, including x-rays and other imaging. He determined that Devices were not the cause of Plaintiff's revision surgery. [Docket No. 23-4]. Rather, he opined that cause of Plaintiff's need for a revision surgery was repeated dislocation of Plaintiff's hip. Dr. Clark reported that even at the time of Plaintiff's revision surgery, the Devices continued to function properly and provide reasonable stability to Plaintiff. [*Id.*]. He suggested that dislocation could have been caused "by many factors, including patient risk factors, such as drug or alcohol consumption and patient weight, positional dislocations, soft tissue laxity, and component malposition," but the Devices were not one of the possible causes. [*Id.*].

In his response to the dispositive motion, Plaintiff offers neither sworn testimony or documentary evidence as to defect or causation. Indeed, having conducted no discovery whatsoever, he would be hard pressed to have any evidence with which to properly support his response.

Although he insists that material facts preclude summary judgment, Plaintiff did not identify a single fact in Zimmer's motion as disputed. Nor does he cite any case law which may resuscitate his claims. As such, he cannot demonstrate the essential elements of any of his claims.

In response to the litany of expert opinions offered by Zimmer, Plaintiff admits that he has not identified an expert witness but states that he "intends" to offer the testimony the surgeon who implanted the Devices, Dr. Joseph Leith, in this regard. This is much too little, far too late. Even if the Court were to permit a designation of an expert six months after the deadline, Plaintiff has not actually provided evidence or testimony from Dr. Leith. Plaintiff has not even made an allegation as to how Dr. Leith will testify or what his opinions will be. As such, the Court cannot discern if or how Dr. Leith's testimony will create an issue of

material fact.

In addition to the lack of expert testimony, Plaintiff has not presented and factual evidence from which to divine a disputed material fact. Notably absent from Plaintiff's proof are the Devices themselves. Plaintiff does not possess the Devices, nor does he know the location of the Devices. Therefore, Plaintiff cannot use the Devices as evidence. This is fatal to his case. In order to prove a manufacturing defect, Plaintiff must prove that the Devices differed from the intended design specification. As previously noted, Plaintiff has not obtained and cannot obtain the design specification for the Devices. The only way the Plaintiff could provide any evidence that the Devices were manufactured other than as intended is by inspecting the Devices themselves. As the Devices are not available for inspection, Plaintiff cannot produce evidence that they were defectively manufactured. Similarly, in order to prove that the Devices were defectively designed, Plaintiff would need evidence of the Device's design. Having neglected to obtain them during the time allotted for discovery in this case, he has neither drawings or specifications for the Devices from Zimmer, nor the Devices themselves from which he can determine the design.

Further, as to warnings defect, Plaintiff does not have the warnings that accompanied the Devices. He is, therefore, unable to critique those warnings.

As all of the relevant discovery deadlines have passed, Plaintiff will not able to obtain either the factual or expert evidence needed to maintain his claim against Defendants.

V.

"[T]he plain language of Fed.R.Civ.Proc. 56 ( c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on

7

which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-323 "Once the moving party has proved that no material facts exist, the non-moving party must do more than raise a metaphysical or conjectural doubt about issues requiring resolution at trial." *Agirstor Financial Corp. V. Van Sickle*, 976 F.2d 233, 236 (6th Cir. 1992). Plaintiff has not done so. As such, summary judgment is warranted.

Accordingly, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [Docket No. 23] be **SUSTAINED**.

This 16th day of July, 2014.



Signed By:
Henry R. Wilhoit, Jr.
United States District Judge