## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF KENTUCKY
### NORTHERN DIVISION
### ASHLAND

**Civil Action No. 13-82-HRW**

**WILSON JOHNSON,**                                              **PLAINTIFF,**

**v.**              **MEMORANDUM OPINION AND ORDER**

**ZIMMER HOLDINGS, INC.**
**and ZIMMER, INC.,**
                                                    **DEFENDANTS.**

    This matter is before the Court upon Defendants Zimmer Holdings, Inc. and Zimmer,

Inc.'s Motion for Award of Attorney's Fees and Expert Expenses [Docket No. 30]. Defendants

seek $47,147.50 in fees and expenses incurred in their defense of this case, from January 7, 2014

until July 31, 2014. For the reasons set forth below, the Court finds that motion is without merit

and will be **OVERRULED**.

### I.

    This is a products liability claim involving artificial hip components which were

manufactured by the Defendants, Zimmer Holdings, Inc. and Zimmer, Inc., and implanted into

Plaintiff Wilson Johnson. Plaintiff is represented by Michael Todd Hogan of Hogan, Derifield

and Perdue, located in Louisa, Kentucky. Defendants are represented by John T Schlafer of

Faegre, Baker, Daniels LLP, located in Indianapolis, Illinois. Carla De La Barra Helstrom and

Douglas Landon of Frost, Brown & Todd's Louisville, Kentucky office serve as Defendants'

local council in this matter.

    In their motion, Defendants state that their request for fees "is based upon Plaintiff's

Counsel's near-total failure to prosecute this case, his failure to dismiss the case upon

determining that it was without merit, and his unfounded opposition to Zimmer's Motion For

Summary Judgment, which contained no competent evidence and failed to designate a single item of material fact as disputed." [Docket No. 30-1 at p. 1]. In support of their argument, Defendants provided the following chronology of what transpired in this case during the relevant period:

1. Plaintiff filed his Complaint in this Court on June 21, 2013 [Complaint, Docket No. 1].

2. Defendants filed an Answer to the Complaint on July 11, 2013.

3. Pursuant to this Court's Order of January 12, 2013, on July 26, 2013, counsel filed a Joint Discovery Plan setting forth agreed upon deadlines for factual and expert discovery. [Docket No. 14].

4. The Court adopted the parties' proposed deadlines, as reflected in the Scheduling Order entered on July 31, 2013 [Docket No. 15]. The Scheduling Order provides, in pertinent part:

> (2) NO LATER THAN **FEBRUARY 7, 2014**, counsel for the plaintiff shall DISCLOSE the identity of expert witnesses who may be used at trial and written reports by the expert witnesses as required by Rule 26(a)(2);
> (2A) NO LATER THAN **MARCH 7, 2014**, counsel for the defendant shall DISCLOSE the identity of expert witnesses who may be used at trial and written reports by the expert witnesses as required by Rule 26(a)(2);
> ....
> (4) NO LATER THAN **MAY 8, 2014** counsel for the parties shall complete all discovery;
> (5) NO LATER THAN **JULY 8, 2014**, counsel for the parties shall FILE all dispositive motions;

[Docket No. 15](emphasis added).

4. Defendants served interrogatories and requests for production on Plaintiff on August 6, 2013.

5.      On August 12, 2013, counsel filed a Proposed Agreed Protective Order pertaining to "certain discovery material to be made available by the Defendants which included "trade secrets and confidential, proprietary" information. [Docket No. 16]. The proposed order appears to be a standard, if not boilerplate document that is doubtless stored in the bowels of the hardrive at Faegre, Baker, Daniels and the office of Defendants' in-house counsel.

6.      Three days later, on August 15, 2013, Plaintiff filed his Rule 26(a) disclosures, identifying Plaintiff Wilson Johnson, Scott Hensley and Plaintiff's operating physician Dr. Joseph Leith, s individuals likely to have discoverable information.

7.      On August 21, 2013, Defendants filed a Notice of Service of their Rule 26(a) disclosures [Docket No. 18].

8.      One week later, on August 28, 2013, the undersigned entered the Agreed Protective Order. [Docket No. 19].

9.      On October 17, 2013, not having received responses to their discovery, Defendants' counsel, John Schlafer sent a one-line email to Plaintiff's Counsel Michael Hogan:

I have not yet received Mr. Johnson's discovery responses, Please advise on their status.
[Docket No. 30-4].

Mr. Hogan did not respond.

10.     On October 25, 2013, counsel for Defendants faxed a letter to Plaintiff's Counsel again inquiring about Plaintiff's failure to respond to the outstanding written discovery and noting that Defendants would file a motion to compel if no

3

response was received. [Docket No. 30-5].

11. On October 31, 2013, Plaintiff's Counsel e-mailed counsel for Defendants and stated that he would send Plaintiff's discovery responses by November 1, 2013. [Docket No. 30-6].

12. November 1 passed with no submissions from Plaintiff's counsel.

13. On November 5, 2013, counsel for Defendants again e-mailed Plaintiff's Counsel and requested responses to discovery.

14. On November 7, 2013, Plaintiff served his responses to the Interrogatories but did not serve any documents in response to Defendants' Request for Production.

15. On February 7, 2014, Defendants served 26 Requests for Admission on Plaintiff's Counsel by certified mail, return receipt requested. On February 13, 2014, Brandi Riffe, staff at Plaintiff's Counsel's office, signed the return receipt. [Docket No. 30-7]. Plaintiff's Counsel did not respond to the Requests for Admission.

16. On March 6, 2014, Defendants filed a Notice of Service of Rule 26(a)(2) Expert Disclosure.

17. On April 8, 2014, counsel for Defendants sent Plaintiff's Counsel an e-mail setting forth the ways in which Plaintiff had failed to prosecute his case and Plaintiff's Counsel's failure to respond to the Requests For Admission and requested that Plaintiff's Counsel dismiss the case. [Docket No. 30-8].

18. In emails dated April 9, 2014, and April 28, 2014, Plaintiff's Counsel stated that he intended to ask Defendants' counsel to sign an agreed order modifying the discovery deadlines. [Docket No. 30-9]. However, Mr. Hogan took no further

action this regard.

19. On May 1, 2014, Defendants filed a Motion for Summary Judgment, arguing, in a 13- page Memorandum, that the lack of discovery and expert testimony in support of Plaintiff's case was fatal. [Docket No. 23].

20. On May 22, 2014, Plaintiff filed a response, citing no evidence or pertinent authority. [Docket No. 24].

21. The following day, Defendants filed three-page Reply in support of their dispositive motion. [Docket No. 25].

22. On July 16, 2014, this Court sustained Defendants' Motion for Summary Judgment and entered a Judgment in their favor. [Docket Nos. 28 and 29].

23. Plaintiff did not appeal and the Judgment is now final.

On August 15, 2014, Defendants filed this Motion for Award of Attorney's Fees and Expert Expenses [Docket No. 30]. On August 29, 2014, Plaintiff filed a Motion for Extension of Time in which to respond to the motion. [Docket No. 31]. The motion was sustained by Order entered on August 29, 2014 and Plaintiff was directed to file his response no later than October 20, 2014. [Docket No. 32]. On October 20, 2014, Plaintiff responded to the motion for fees. [Docket No. 33]. On October 31, 2014, Defendants filed their Reply. [Docket No. 34].

On the same day, the undersigned entered an Order directing Defendants to file time and task records for the work by Defendants' attorneys and experts, as well as copies of all invoices submitted to Defendants for services rendered from the beginning of this case as well as a record of remittances in response to those invoices. [Docket No. 35].

Defendants timely filed certain records, under seal, along with a Motion for Leave to

Seal. [Docket Nos. 36 and 37]. Plaintiff filed a Response on November 19, 2014 [Docket No. 38].

The motion is fully briefed and stands submitted to the Court for decision.

## II.

Defendants' motion is made pursuant to 28 U.S.C. § 1927, which provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so **multiplies** the proceedings in any case **unreasonably and vexatiously may** be required by the court to satisfy personally the **excess** costs, expenses, and attorneys' fees **reasonably incurred** because of such conduct.

28 U.S.C. § 1927 (emphasis added).

Section 1927 is penal in nature, enacted to deter unnecessary litigation by requiring attorneys to **personally** foot the bill for excess costs attributable to their conduct. In 1980, the statute was amended to cover attorneys' fees, a well as costs. *See generally, Roadway Express, Inc. v. Piper*, 447 U.S. 752, 759-62 (1980). Although penal statutes are construed strictly, the imposition of sanctions pursuant to this statute is discretionary, and is not mandatory. *Calcasieu Television and Radio, Inc.*, 124 F.R.D. 120, 138-139 (1989).

This statute operates separate and apart from Fed.R.Civ.Proc. 11. The United States Court of Appeals for the Sixth Circuit has determined a distinction between sanctions sought pursuant to Rule 11, requiring a showing of bad faith, and the lower "unreasonable and vexatious multiplication" standard applying to assessments under § 1927. *Reynolds v. Humko Products*, 756 F.2d 469, 473 (6th Cir.1985).

28 U.S.C. § 1927 authorizes a Court to assess fees against an attorney personally for "unreasonable and vexatious" multiplication of litigation despite the absence of any conscious

6

impropriety. "An attorney's ethical obligation of zealous advocacy on behalf of his or her client does not amount to *carte blanche* to burden the Federal Courts by pursuing claims that are frivolous through the use of multiplicative litigation tactics that are harassing, dilatory, or otherwise 'unreasonable and vexatious'." *Id.* Accordingly, at least when an attorney knows or reasonably should know that a claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of nonfrivolous claims, a trial court does not err by assessing fees attributable to such actions against the attorney. *Jones v. Continental Corp.*, 789 F.2d 1225, 1229 (6th Cir.1986).

In examining the facts pursuant to the statute, the Court is mindful that, in contrast to law defined and refined by caselaw, short of a legislative amendment, statutes are not ever changing, continually evolving or subject to relentless re-interpretation. "[I]n interpreting a statute a court should always turn to one cardinal canon before all others. . . .[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat'l Bank v. Germain*, 112 S.Ct. 1146, 1149 (1992).

The statute at issue applies to those who "**multiply**" the proceedings. This suggests a proliferation and prolongation. The phrase "**unreasonably and vexatiously**" describes conduct that, viewed under an objective standard, evinces the intentional or reckless pursuit of a claim, defense or position (1) that is or should be known by the lawyer to be unwarranted in fact or law or (2) that is advanced for the primary purpose of obstructing the orderly progress of the litigation. Only "**excess**" costs incurred as a result of the multiplicative misconduct are recoverable under Section 1927—not **all** of the attorneys' fees incurred by a litigant in prosecuting or defending a case. Finally, the only excess costs, expenses and attorneys' fees

7

awardable are those that have been **"reasonably incurred"** as a result of the wrongful multiplication of the proceedings, thereby imposing a requirement for mitigation. *In re Ruben*, 825 F.2d 977, 988 (6th Cir. 1987).

## III.

Defendants' argument in support of their application for almost $50,000 in fees and costs is that Plaintiff's case became, in their view, "unwinnable" on January 7, 2014, at the latest. They state:

> On January 7, 2014, Plaintiff's Counsel became unable to collect the evidence an expert would need to render an opinion. After January 7, 2014, Zimmer was forced to defend itself against a lawsuit that was not just weak or tough for Plaintiff, but which was meritless. For this reason, Plaintiff's Counsel should be required to reimburse Zimmer for the attorney's fees and expert expenses it incurred in this matter after January 7, 2014.

[Docket No. 30-1, p. 8].

As Defendants have identified the time period in which Plaintiff's counsel's allegedly sanctionable conduct occurred, it is necessary to examine what, in fact, he did to needlessly multiply the proceedings from January 7, 2014 forward.

Based upon the record before the Court, Plaintiff's counsel did nothing in furtherance of this case during the month of January, 2014. On February 13, 2014, a member of Mr. Hogan's staff signed the return receipt for the Defendants' Requests for Admission. He then received an email dated April 8, 2014 from Mr. Schlafer, demanding he relinquish his case. On April 9, 2014, Mr. Hogan sent a reply email, stating, "[w]e will be asking you to sign an Agreed Order modifying the discovery deadlines. If you are unable to do so then we will ask the court. It is my

intention to get this case back on track." [Docket No. 30-9]. Following that, there appears to be no activity on behalf of Plaintiff until Mr. Hogan filed his response to Defendants' Motion for Summary Judgment on May 22, 2014. These minimal actions can hardly be described as **multiplying** the proceedings. To the contrary, Mr. Hogan did precious little and then, only a bit. His only actions were actually reactions to steps taken by Defendants' counsel.

By contrast, what did Defendants' counsel do from January until July? The time and task records submitted to the Court establish that Mr. Schlafer, his underlings and experts expended **153.5** hours defending a case which was barely being prosecuted. Yet, in their motion seeking reimbursement, from Mr. Hogan's own pocket, they blithely state "Zimmer did not use a sledge hammer to swat a fly in this matter." [Docket No. 30-1, p. 15]. If a hammer was not employed in the pursuit of a fly, Zimmer's counsel certainly churned this case, all the way from raw milk into creamery butter.

Moreover, Defendants argue that this case became "unwinnable" as of January 7, 2013 **"at the latest."** Why then, did their counsel continue to actively and aggressively churn this matter, to the tune of almost $50,000 in fees and costs? Their position is puzzling, at best. If they contend that on January 7, 2014, Plaintiff's claim was rendered "unwinnable", why did not they not file a dispositive motion then and there? Zimmer could have halted these proceedings, but chose, instead, to prolong the inevitable. It was Defendants' counsel who **multiplied** these proceedings, not Plaintiff's counsel.

The Sixth's Circuit opinion in *Gibson v. Solideal USA, Inc.,* 2012 WL 2818944 (6th Cir. 2012) is instructive in this case. From 2005 until June 2009, Shawn Gibson was employed by

9

Solideal, as a service technician. His job involved physically strenuous labor. *Id.* at *2. In February 2009, Gibson sustained a work-related shoulder injury requiring surgery. Gibson's physician restricted him to "light-duty" status, and Solideal allowed him to continue as an employee at the same salary, but limited to light physical duties and without the commissions he received as a service technician. At the time, Solideal paid for Gibson's medical benefits, covering his medical bills. *Id.* Solideal had recently undergone a reduction in force, leaving Gibson as the only service technician at its Louisville, Kentucky branch.

Consequently, Gibson's inability to perform the functions of a service technician required Solideal to retain outside technicians to cover his responsibilities. Although Gibson was scheduled for surgery while still on light duty, the surgery was delayed due to complications with his other medical conditions. *Id.* On June 30, 2009, Solideal terminated Gibson's employment on the stated grounds that he was unable to perform the essential functions of his position. *Id.* After his termination, Gibson received bi-weekly "total temporary disability" workers' compensation payments. Solideal did not contest the workers' compensation payments, and it did not challenge its obligation to pay medical expenses related to the workplace injury. *Id.*

In July 2009, Gibson filed a Complaint against Solideal alleging employment discrimination and retaliatory discharge Kentucky state court. *Id.* His verified complaint was submitted on his behalf by Robert Catlett, an attorney employed by Appellee Sales, Tillman, Walbaum, Catlett & Satterley, PLLC . *Id.* Specifically, the Complaint alleged that Gibson's termination constituted intentional discrimination "on the basis of the work-related accident which he suffered and his efforts to pursue a lawful [workers' compensation] claim...." Solideal timely removed the action to the United States District Court for the Western District of

Kentucky.

On November 24, 2009, Gibson filed a formal workers' compensation claim, seeking full or partial permanent disability compensation. *Id.* That claim settled in August 2010. The federal litigation remained pending. In connection with the federal litigation, Catlett conducted no discovery on Gibson's behalf during the agreed-upon discovery period. *Id.* On August 31, 2010, upon the expiration of discovery, Solideal moved for summary judgment. It argued that Gibson's claim should be dismissed because, at the time of Gibson's termination, he had not filed a lawful workers' compensation claim and the record contained no evidence of his intent to do so. Solideal alternatively asserted that it had articulated a non-discriminatory basis for Gibson's discharge: his inability to perform the essential functions of his job. Gibson filed an untimely response to Solideal's motion for summary judgment. Gibson argued in part that summary judgment was inappropriate because Kentucky case law permits a plaintiff to proceed under KRS § 342.197 even if he has not filed a formal workers' compensation claim, so long as he intends to do so. *Id.*

In a January 7, 2011 Memorandum Opinion, Chief Judge Heyburn court granted Solideal's motion for summary judgment. *Id.* On February 7, 2011, Solideal filed a "Motion for Attorney's Fees and Expenses." Solideal first asserted that Gibson and Catlett should be sanctioned pursuant to Federal Rule of Civil Procedure 11 for prosecuting a claim with no factual or legal predicate. *Id.* at *3. It claimed that, because Gibson conceded that his termination was due to his injury rather than any protected activity, he "is and always was incapable of establishing a cognizable KRS 342.197 claim." Solideal next asserted that Attorney Catlett should be sanctioned pursuant to 28 U.S.C. § 1927, because the attorney unreasonably and vexatiously multiplied the litigation.

11

Solideal noted that Catlett did not pursue any discovery and did not withdraw Gibson's claim once it became clear that it was without support. Finally, Solideal asserted that Appellees should be sanctioned pursuant to the district court's inherent powers. It maintained that Gibson's lawsuit lacked colorable evidentiary support from the beginning: because Solideal believed that the action was clearly meritless, it asserted that the plaintiff's continued litigation was "tantamount to bad faith." *Id.* at *3.

> In overruling the motion, Judge Heyburn wrote:

> The Court has carefully reviewed the case and its own Memorandum Opinion
> dismissing it. Here, it became evident that Plaintiff did not receive worker's
> compensation benefits until after his termination and the business conditions also
> contributed to the termination decision. Though this case ended as a weak one and
> perhaps, in retrospect, should not have been filed, the Court cannot say that it was
> frivolous at the outset. Though a showing of bad faith is not a requirement of a
> successful Rule 11 [claim], the Court can find none here. This Court took the
> appropriate action by dismissing Plaintiff's case. Further sanctions are not
> warranted under Rule 11.

*Id.* at *3.

> Although it denied Solideal's motion and discussed Rule 11, the district court did not explicitly address 28 U.S.C. § 1927.

> Solideal appealed. In affirming Judge Heyburn's decision, Judge Mattice[1] observed:

> As an initial general proposition, we are not entirely unsympathetic to Solideal's
> position. Statutes designed to empower employees in the vindication of their
> rights may, at times, be used as bases on which a plaintiff asserts claims that are
> later determined to be without merit. Undeniably, large employers may be forced
> to incur significant litigation expenses in defending against such claims. However,

---

[1] United States District Court Judge for the Eastern District of Tennessee Harry S. Mattice, sat by designation.

**if this Court were to follow the course now advocated by Solideal, it would effectively hold that a plaintiff who elects to forgo formal discovery and whose claims are unable to withstand summary judgment is responsible for paying all fees and costs the defendant incurred in connection with the litigation. This is a bridge too far.**

*Id.* at *3 (emphasis added).

Judge Mattice further noted:

Solideal has not identified any unnecessary multiplication of proceedings based on "aggressive tactics that far exceed zealous advocacy" so as to implicate 28 U.S.C. § 1927. *Garner, 554 F.3d at 644.* Indeed, just the opposite appears true: Solideal complains of Catlett's "unacceptably lax attitude toward litigation" and languid litigation strategy, i.e., filing a meritless claim and then failing to conduct discovery or file adequately substantial briefs. While it alleges that Catlett should have made additional legal inquiries into the bases for Gibson's claim, this is insufficient: **"the mere finding that an attorney failed to undertake a reasonable inquiry into the basis for a claim does not automatically imply that the proceedings were intentionally or unreasonably multiplied."** *Ridder v. City of Springfield,* 109 F.3d 288, 290 (6th Cir.1997).

*Id.* at *3 (emphasis added).

Judge Mattice also took note of Solideal's complicity:

Likewise, the fact that Catlett could have done more to speed the adjudication of the claim—or was perhaps negligent for failing to do so—is not an appropriate basis for § 1927 sanctions. *See Hall, 595 F.3d at 275–76.* As above, **if Gibson's claim was as baseless as Solideal suggests, it could have halted proceedings with an early motion to dismiss.** *See Riddle, 266 F.3d at 553.*

*Id.* at *3.

As in *Gibson*, in this case Plaintiff's counsel failed to conduct any discovery or file substantial briefs. Defendants seeks sanctions for what can be described as an exceedingly "lax

13

attitude toward litigation" and a "languid litigation strategy." However, as in *Gibson*,

Defendants did not come to the Court when the case became in their terms "unwinnable", thereby

failing to mitigate their damages, so to speak. Instead, they continued to labor, **extensively** and

**unreasonably.** As Judge Mattice suggested, Defendants are complicit, if not fully responsible

for the staggering fees generated after the case became, according to them "unwinnable" by

Plaintiff. As the Sixth Circuit ruled in *Gibson,* the conduct, or lack thereof, of Plaintiff's counsel

did not "multiply the proceedings."

## IV.

Defendants take the position that Plaintiff's counsel was fairly warned that they would

ask for more than judgment in their favor. On April 8, 2014, Mr. Schlafer sent Mr. Hogan an

email, which read:

> Mike,
>
> I'm writing to ask that you dismiss Mr. Johnson's complaint against
> Zimmer with prejudice. The reasons you should do so are numerous. You
> have served no written discovery and the deadline to serve written
> discovery has now
> passed. You have taken no depositions. You have stated in your discovery
> responses that the only evidence of a defect is Mr. Johnson's medical
> records and those medical records do not indicate the existence of a defect.
> You have failed to
> serve expert reports. You have failed to locate the explanted devices. You
> have failed to respond to Zimmer's requests for admission. You obviously
> recognize that Mr. Johnson has no case.
>
> Please do the right thing and dismiss Mr. Johnson's complaint.
>
> **If you do not dismiss Mr. Johnson's complaint, my client has
> instructed me to move aggressively to resolve this case.** If I do not
> receive a copy of your responses to Zimmer's requests for admission and a
> proposed motion to substitute your responses for your current admissions
> by default by April 22, **Zimmer will file a motion to compel responses to**

**its requests for admission. Zimmer will also request the attorney's fees it incurs in preparing that motion, which are mandatory under rule 37(d).** Should you provide responses to the requests for admission, Zimmer intends to pursue recovery of its attorney fees for any expense it incurs in proving the truth of any request for admission that you inappropriately deny and any expense it incurs in moving to compel answers to any requests for admission that you attempt to evade through objections or a claim of lack of information. You have had many, many months to investigate the matters addressed in Zimmer's requests for admission, and lack of knowledge is not a valid reason to state that you can neither admit nor deny any of Zimmer's requests for admission.

Forcing Zimmer to file a motion for summary judgment to dispose of this matter is a waste of the court's and my client's resources.

I look forward to receiving your proposed stipulation of dismissal with prejudice.

Yours,
John

[Docket No. 30-8](emphasis added).

Mr. Hogan served responses to the outstanding Interrogatories three days later, On April 11, 2014. Yet, as Defendants pointed out in the instant motion as well as in their Motion for Summary Judgment, he did not serve documents responsive to the Request for Production. Yet, despite the threat to do so, no Motion to Compel was filed, or, according to the task and time records submitted pursuant to the undersigned's Order [Docket No. 35], drafted.

Instead, Defendants counsel retreated behind closed doors and spent 17.3 hours in March, 38 hours in April and 1.8 hours in May drafting a Motion for Summary Judgment, before finally pulling the trigger by filing it on May 1, 2014. It appears that 3.5 hours were spent in May analyzing Plaintiff's response and drafting a Reply. Given that Plaintiff's case was so clearly without merit, according to Defendants, it boggles the mind that **57.1** hours were devoted to

drafting a straight forward, garden-variety motion and memorandum.

With regard to the infamous email, it is noteworthy that the records reveal that although it was transmitted on April 8, 2014, it was drafted on March 13, 2014 by Mr. Schlafer who expended no fewer than 0.8 hours doing so, for which he billed $260.

The delay between drafting the email, sending the email and filing the dispositive motion begs the question: why did Defendants tarry? A cynic might suggest that Defendants counsel were paving the way for the instant motion. Although they claim Mr. Hogan was duly warned, it is doubtful he was fairly alerted to the trap in which he would be ultimately find himself ensnared. **Unreasonable and vexatious**, indeed.

## V.

Section 1927 pertains only to fees and costs where were **"reasonably incurred"** by virtue of opposing counsel's unreasonable conduct. The princely sums sought by Defendants are questionable given that the litigation at issue can hardly be described as spirited. It was, in fact, the opposite. As discussed *supra*, a simple dispositive motion, filed in January, could have ended the case. The hours devoted to, and the fees generated by, the preparation of Defendant's dispositve motion

belie their own contention that the case was a no-brainer. Indeed, the dispositive motion, to which **57.1** hours were dedicated is a pedestrian one, lacking complex legal argument or detailed factual recitation. Yet, after 1.1 hours of research for the motion conducted by Mr. Schlafer in January 9, 2014, counsel ran up a bill of $4,112.50 over a period of six days in March in this regard:

| Date | Name | Hours | $Value | Description |
|------|------|-------|--------|-------------|
| 3/5/14 | J.T. Schlafer | 1.40 | 455.00 | Draft motion for summary judgment |
| 3/5/14 | V.A. Yoke | 0.50 | 112.50 | Begin to prepare motion for summary judgment |
| 3/18/14 | V.A. Yoke | 5.10 | 1,147.50 | Continue to prepare motion for summary judgment |
| 3/19/14 | V.A. Yoke | 5.50 | 1,237.50 | Continue to prepare motion for summary judgment |
| 3/20/14 | V.A. Yoke | 0.60 | 135.00 | Continue to prepare motion for summary judgment |
| 3/21/14 | V.A. Yoke | 1.90 | 427.50 | Continue to draft summary judgment brief |
| 3/21/14 | J.T. Schlafer | 0.80 | 260.00 | Draft motion for summary judgment with V. Yoke |
| 3/31/14 | V.A. Yoke | 1.50 | 337.50 | Continue to prepare motion for summary judgment |
| TOTAL | | 17.30 | 4,112.50 | |

[Attorney Invoices, Docket No. 37-1 at p. 29].

Although the argument for summary judgment was simple, to-wit, that Plaintiff did not conduct discovery and thus has no evidence to support his cause of action, Zimmer's counsel toiled further on the motion in April:

| Date | Name | Hours | $Value | Description |
|------|------|-------|--------|-------------|
| 4/4/14 | V.A. Yoke | 2.90 | 652.50 | Prepare draft summary judgment brief |
| 4/7/14 | V.A Yoke | 0.10 | 22.50 | Finish draft of summary judgment motion |
| 4/7/14 | V.A Yoke | 1.90 | 427.50 | Finish draft of summary judgment brief |
| 4/9/14 | J.T. Schlafer | 6.50 | 2,112.50 | Draft motion for summary judgment and memorandum in support thereof |
| 4/10/14 | V.A. Yoke | 0.60 | 135.00 | Begin to revise motion for summary judgment |
| 4/10/14 | J.T. Schlafer | 0.80 | 260.00 | Draft motion for summary judgment with V. Yoke |
| 4/10/14 | J.T. Schlafer | 2.50 | 812.50 | Draft expert declaration of D. Miller in support of motion for summary judgment |
| 4/16/14 | V.A. Yoke | 1.30 | 292.50 | Revise motion for summary judgment |
| 4/17/14 | V.A. Yoke | 3.90 | 877.50 | Revise summary judgment motion |
| 4/18/14 | J.T. Schlafer | 1.40 | 455.00 | Draft motion for summary judgment |

| 4/21/14 | J.T. Schlafer | 0.80 | 260.00 | Draft motion for summary judgment |
|---------|---------------|------|--------|-----------------------------------|
| 4/28/14 | J.T. Schlafer | 4.50 | 1,462.50 | Draft motion for summary judgment |
| 4/29/14 | J.T. Schlafer | 3.30 | 1.072.50 | Draft motion for summary judgment |
| 4/30/14 | J.T. Schlafer | 7.50 | 2,437.50 | Draft, including cite check all documents and coordinate preparation of exhibits, motion for summary judgment, declaration of J. Schlafer, memorandum in support of motion, and proposed order |
| **TOTAL** | | **38.00** | **11,280.00** | |

*Id.* at p. 32.

Defense counsel undertook another 5.30 hours of labor on the motion in the month of May, for a grand total of 57.1 hours.

The Court is mindful that this was not the only time expended by Defendants' counsel in its vigorous defense of this case. The Court has highlighted the time spent on the dispositive motion. This does **not** include the hours upon hours "studying" and "analyzing" various documents, "conferring with" one another and otherwise "working on" this matter. Upon review Defendants' counsel's time records, one could easily conclude they were defending against a claim of complex conspiracy or fraud - not the "unwinnable" design defect claim unsupported by any discovery or expert testimony. To read the records is to be like Alice, peering through a looking glass...

The instant motion is surely the product of countless hours as well. The 17-page memorandum includes a discussion of several cases which Defendants maintain support their cause. However, a review of the caselaw cited by Defendants reveals that Section 1927 is not a golden goose. Section 1927 sanctions, when awarded by courts in this Circuit, are based upon extreme dilatory conduct and the fees awarded are pocket change compared to exorbitant amount

sought by Defendants.

One such case relied upon by the Defendants is *Bailey v. Papa John's USA, Inc.*, 2007 WL 1663713 (6th Cir. 2007). Gerard Bailey filed a Complaint against his former employer, Papa John's, alleging discrimination. Specifically, he alleged two counts: (1) termination resulting from racial discrimination in violation of Title VII and (2) failure to compensate for overtime worked in violation of the Fair Labor Standards Act. Plaintiff was deposed on October 21, 2003, and conceded in his deposition that he was an exempt employee under the Fair Labor Standards Act and was therefore not entitled to overtime pay. *Id.* at 2.

Based on the lack of evidence supporting the Fair Labor Standards Act claim at the conclusion of Bailey's deposition, defendant's counsel wrote letters on two different occasions to plaintiff's counsel asking him to withdraw the Fair Labor Standards Act claim. *Id.* Plaintiff's counsel failed to respond to either letter and did not withdraw the claim. He explained at oral argument that he was experiencing family difficulties during that time. *Id.*

Defendant filed its motion for summary judgment four months later, on February 2, 2004. Plaintiff received several extensions in filing his response to the summary judgment motion and ultimately filed it in September 2004. *Id.*

On November 14, 2004, the district court granted summary judgment to defendant Papa John's on both counts. Bailey appealed only the Title VII claim to our Court and specifically waived his right to appeal his Fair Labor Standards Act claim. The Sixth Circuit affirmed the district court's judgment for defendant. *Id.*

During the pendency of the appeal on the merits, defendant filed a motion in the district

court for attorney fees totaling about $95,000 and for litigation expenses and costs in the amount of $3,334.50. Defendant sought attorney fees pursuant to Section 1927 as well as Rule 11 for both the Title VII claim and the Fair Labor Standard Act claim. *Id.*

The district court awarded defendant the full amount of costs but only $5,000 in fees - less than 5% of the amount requested by defendant. *Id.* In affirming the district court's award, Justice Merritt, writing for the Sixth Circuit, observed:

> By failing to acknowledge that Bailey did not have a cognizable Fair Labor Standards Act claim, Bailey's attorney prolonged the inevitable at a cost to Papa John's. By refusing to voluntarily claim dismissed, counsel unreasonably protracted the proceedings. Accordingly, attorney fees are warranted.

*Id.* at 4.

With regard to the actual amount awarded, Justice Merritt reiterated the reasoning set forth by the district court.

> During the approximately four-month time frame between taking Bailey's deposition on October 21, 2003, and filing the summary judgment motion on February 2, 2004, defendant expended $19,047 in attorney fees. Looking at the award from that perspective, the $5,000 award is about one-fourth of the amount expended during the time period in which the district court found that it was improper for plaintiff's counsel to have pursued the Fair Labor Standards Act claim (Date of Bailey's deposition on October 21, 2003, to filing of summary judgment motion on February 2, 2004).

*Id.*

Justice Merritt then concluded:

> After studying the facts in the record obtained by this Court from the district court, we conclude that the district court did not abuse

> its discretion in awarding $5,000 in attorney fees or approximately one-fourth of the total amount expended by defendant during the four-month period between plaintiff's deposition and the filing of defendant's summary judgment motion.

*Id.*

In *Bailey*, both the district court and the Sixth Circuit that Plaintiff's counsel should have dropped the FLSA claim following Plaintiff's deposition. That he pursued the claim, to the bitter end did, indeed, multiply the proceedings, and unreasonably so. However, in the view of these esteemed judges, the price tag on the sanctionable behavior was not $95,000 but $5,000.

Another case cited by Defendants in support of their motion is *Runfola & Associates v. Spectrum Reporting, II, Inc.*, 88 F.3d 368 (6th Cir. 1996). The case originated as an antitrust action between rival court reporting business. In 1988, two of Plaintiff Runfola's most widely utilized reporters, Barbara Rogers and Nicholas Marrone, left Runfola and formed their own court reporting firm, Spectrum Reporting, Inc. *Id. at 370.* In the period following the defection of Rogers and Marrone, Runfola lost both clients and staff to Spectrum. The losses led Runfola to file a lawsuit against Spectrum, several individuals and another Columbus-based court reporting firm, PRI, in the United District Court for the Southern District of Ohio, alleging violations of the Sherman Antitrust Act, 15 U.S.C. § 1, and unfair business practices in violation of state law. *Id. at 371.* In overruling defendants' motion to dismiss, the district court noted that plaintiffs' allegations were phrased in somewhat vague and conclusory terms and warned that Plaintiff would need to discover facts sufficient to maintain its civil action. *Id. at 370.* A few months later, the district court sustained a subsequent dispositve motion on all but one of the counts - alleging a breach of a covenant not to compete.

21

In spite of the district court's admonition that plaintiff should produce evidence, between September 1991 and late January 1993, Runfola pursued no discovery. On January 19, 1993, plaintiff served defendant with thirteen notices of deposition. However, these depositions, for reasons upon which the parties do not agree, did not go forward. On February 17, 1993, this case was transferred to another district judge, and a discovery deadline of August 1, 1993 was ordered. On March 1, 1993, defendants filed motions for summary judgment, to which plaintiff did not timely reply, arguing that there was no evidence of an antitrust violation. After several procedural skirmishes, plaintiff finally filed a response to defendants' motions for summary judgment on September 9, 1993, over six months from the date that defendants had filed their motions. In opposing summary judgment, plaintiff offered only one exhibit, a fifteen page affidavit of Thomas Runfola. Plaintiff had completed none of the depositions that it had noticed. *Id. at 372.*

On November 1, 1993, the district court granted Spectrum's motion for summary judgment. In granting summary judgment, the court found that plaintiff had produced no evidence of harm to competition by defendants. The court also granted defendant's motion to strike Runfola's affidavit, stating that the affidavit. *Id.*

A month later, defendant filed a motion for sanctions. Following a hearing on the motions, the district court imposed sanctions against plaintiff Runfola and its counsel and directed defendants to file itemized statements of their attorneys' fees and costs. Having considered the defendants' submission of $109,305.90 in attorney fees and $5,671.14 in costs, the district court imposed a joint liability of $15,671.14 in sanctions against Runfola and its counsel, Kelm. A

lump sum of $10,000 was also divided three ways among the defendants. *Id.* Defendants appealed.

The sanction were affirmed. In a *per curiam* opinion, the Sixth Circuit panel observed:

> The district court imposed sanctions for the manner in which **plaintiff excessively lengthened the discovery process** yet failed to voluntarily dismiss this action after becoming aware of their inability to assert any competent evidence to support their claims.

*Id. at 373* (emphasis added).

The Court further noted:

> In the present case, plaintiff was given over **two and one half years** to conduct enough discovery to defeat a motion for summary judgment. However, the only evidence plaintiff presented was a fifteen page affidavit which was stricken by the district court for its baselessness. **Plaintiff's tactics forced defendants to expend significant time and money in defense of a meritless action.**

*Id.* (emphasis added).

Although *Runfola* involved sanction imposed pursuant to Rule 11, it is highly instructive here. First, as in *Bailey*, the Court awarded significantly less in fees than was sought. Second, in *Runfola*, the litigation was protracted, to over **two** years. Third, counsel in *Runfola* had been explicitly warned by the Court that discovery was needed in order to maintain their claims and yet, despite the clear monitory, plaintiff failed to participate in discovery. *Runfola* does not support Defendants' position at all. Rather, it only serves to highlight that the case at hand is a far cry from instances in which sanctions are warranted.

The third case cited by Defendants, *In re Olympia Brewing Company Securities Litigation*, 613 F. Supp. 1286 (N.D. Ill. 1985) hails from the Northern Division of Illinois. Its

lack of precedential value notwithstanding, it, too, underscores the weakness of Defendants'

position. The action was filed alleging violations of the Securities Act and Securities Exchange

Act and including allegations of short-selling market manipulation. The case was ultimately

dismissed and the defendants sough fees and costs pursuant to Section 1927 as well as Rule 11.

Defendants argued that plaintiff had failed to conduct any discovery. Plaintiff countered,

pointing out that defendants did nothing to extricate themselves from the litigation or to seek

dismissal earlier. *Id.* at 1304. The court concluded that as the litigation proceeded, needlessly,

for almost four years, sanctions were warranted. *Id.* at 1305. As to the amount of fees, the court

stated that the reasonableness of fees requested by defendant would be considered in calculating

the award and ordered that the defendants file an itemized fee petition. *Id.* Defendants have not

enlightened us as to the dollar amount ultimately awarded.

Finally, Defendants rely upon Chief Judge Carl Rubin of the Southern District of Ohio's

opinion in *Fifth Third Bank v. Boswell*, 125 F.R.D. 460 (S.D. Ohio 1989). Judge Rubin

describes the litigation as "complex" involving promissory notes and mortgages and one that was

resolved in several stages. *Id.* at 461. Ultimately, defendant's sought sanctions against plaintiff

for failing to conduct discovery. Judge Rubin found that "plaintiff's cause of action became

harassing, dilatory and otherwise unreasonable and vexatious upon the passage of ten months

after the filing of defendant's answer and counterclaim." *Id.* at 463. He then determined that a

reasonable amount of time for the preparation and filing of defendant's dispositive motion was

**15.5** hours plus **5.0** hours for a reply, and awarded fees accordingly. *Id.*(emphasis added). A

total of 25.5 hours, in a case that the judge himself described as "complex" casts serious doubt

upon Defendants' counsel's over **50** hours of effort on a pedestrian motion in a case which can be

described as a "slam dunk."

**VI.**

Following the filing of Defendants' application for costs a and fees, the undersigned

entered an Order directing Defendants to file their counsel's time and task records, as well as

copies of all invoices and remittances pertaining to this case.

Defendants filed 43 pages of time and task records, however their submission was devoid

of any proof of actual payment of the fees generated by Zimmer. Those documents do not exist.

In an affidavit, Mr. Schlafer informed the Court, for the first time, of what he calls an "alternate

fee arrangement" between his law firm and Zimmer. [Docket No. 37, ¶ 4]. Mr. Schlafer

describes the arrangement:

> Zimmer pays a monthly flat fee to Faegre Baker Daniels for all of
> the cases in the General Product Liability group, regardless of the
> amount invoiced. Some months the amount paid by Zimmer is
> more than the amount invoiced. Some months the amount paid by
> Zimmer is less than the amount invoiced. Regardless, the amount
> paid by Zimmer is the same every month.

*Id.* at ¶ 6.

He further explains that over the course of this litigation, Zimmer has been invoiced a

total of $61, 383.00. $47, 147.50 was billed for attorney's fees from January 7, 2014 to July 31,

2014. *Id.* at ¶ 9. However, Mr. Schlafer states that per the "alternate fee arrangement", Zimmer

has only paid $32, 510.00 , only 75% of the amount invoiced. Which raises the question: Why

are Defendants seeking $47,147.50, roughly $15,000.00 **more**?

More troubling than the apparent windfall sought by Defendants is the fact that the

"alternate fee arrangement" and the discrepancy in the amounts at issue only came to light

pursuant to the Court's order for further documentation. Had the undersigned not required Defendants to provide their counsel's time records, as well as proof of what was invoiced and what was paid, we would still be in the dark.

## VII.

In order to trigger sanctions under Section 1927, the lawyer's conduct must multiply the proceedings both "unreasonably and vexatiously." That is, a federal district court may only impose sanctions pursuant to Section 1927 "if [:] (1) the actions of the attorney multiply the proceedings and (2) the attorney's actions are [both] vexatious and unreasonable." The power granted to the federal district courts to utilize this sanction is one that must be strictly construed. It is also one which should be utilized only in situations evidencing a serious disregard for the orderly process of justice.

In this case, it is abundantly clear that Plaintiff's counsel did not run afoul Section 1927. If any character is this unfortunate tale can be said to have acted with a lack of civility and in an unreasonable manner, it would be the Defendants and their counsel.

The Court is mindful that an award of sanctions pursuant to Section 1927 is purely discretionary. In the undersigned's opinion, sustaining Defendants' motion would be an abuse of discretion.

Accordingly, **IT IS HEREBY ORDERED** that Defendants Zimmer Holdings, Inc. and Zimmer, Inc.'s Motion for Award of Attorney's Fees and Expert Expenses [Docket No. 30] be **OVERRULED**.

This 16th day of December, 2014.

Signed By:

*Henry R. Wilholt, Jr.*
**United States District Judge**